# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 08-0081 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MARCUS WILLIAMS | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 filed by *pro se* Petitioner Marcus Williams.  [doc. #85].  For reasons stated below, it is recommended that the motion be **DENIED**.

## BACKGROUND

The Indictment against Petitioner was filed in the Western District of Louisiana on March 27, 2008  [doc. # 1], charging him with the following: Count One: Possession of a Firearm and Ammunition by a Convicted Felon; and, Count Two: Forfeiture.  *Id.*

On April 9, 2008, Petitioner pleaded not guilty as to Counts One and Two of the Indictment.  [doc. # 10].  Petitioner was tried by jury before Chief Judge Robert G. James on April 15, 2009.  [docs. # 50-57].  The facts established at Petitioner's trial are adopted from Respondent's brief:

> On October 5, 2007, officers from the Monroe, Louisiana police department responded to a shooting call and discovered defendant had been shot and taken to the hospital (PSR, ¶ 5). At trial, Antoinette Tillman testified that she and defendant were engaged in an argument when defendant showed her that he was wearing a gun tucked into his waistband (Doc. 70, p. 6). While they were arguing a car drove up and defendant removed the gun from his waistband and pointed it into the passenger side of the car and aimed the gun at Antonio Bolden (Doc. 70, p. 7). Defendant pulled the trigger but the gun jammed (Doc. 70, p. 23). Bolden then pulled his own firearm and shot defendant (Doc. 70, pp. 8, 23). Immediately after the shooting, defendant's girlfriend, Jamie Foster, came to his aid and took the gun from his possession (Doc. 70, p. 61). Foster testified at trial that she had seen that same gun in defendant's possession on three occasions (Doc. 70, pp. 57- 59). She also testified that on

October 5, 2007 defendant had brought two other firearms to the apartment at which she was staying (Doc. 70, p. 59).

Antron Ellis, a friend of defendant's, testified that after Bolden shot defendant Ellis saw defendant cock the gun again and point it to the back of the car. People were yelling at defendant not to shoot because there was a little boy in the car (Doc. 70, p. 81). After Foster took the gun from defendant, Ellis took the gun from Foster and went to apartment 214 at Parkview Apartments where Ellis gave it to Tabitha James and told her to put it up. She put it in a box on a motor scooter (Doc. 70, pp. 83-84).

The night before this incident the defendant had given Ellis a chrome .38 revolver, with a wooden handle (Doc. 70, p. 86). At the same time defendant gave Ellis the chrome gun (Ex. 6) defendant also had the .9 mm (Ex. 2) in his belt loop (Doc. 70, p. 87). After the shooting, Ellis took the police to Parkview Apartments and showed officers the two guns he had received from defendant (Doc. 70, p. 88).

Kenneth Hancock of the Monroe Police Department testified that he seized two handguns, a Tech .9 mm handgun and a Bryco .380 handgun, and a partial box of ammunition wrapped in a white shirt from the residence where Foster was staying at 115 Bunch Circle (Doc. 70, pp. 104-105). He seized two additional firearms from the Parkview Apartments where Ellis had taken them, an INA .38 revolver and a Hi-Point .9 mm semi-automatic (Doc. 70, p. 106). Exhibits 7, 8, 9, and 10 are photographs of the firearms he seized (Doc. 70, p. 106).

[doc. # 89-1, 4-7]. The jury found Petitioner guilty of possessing the Hi-Point 9mm pistol. [doc. # 57]. On August 24, 2009, Petitioner was sentenced to 120 months imprisonment and three years supervised release, a sentence within the Pre-Sentencing Report calculated guidelines range including a two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(A) for the possession of three to seven firearms. [doc. # 65].

Petitioner appealed the District Court's sentence to the Fifth Circuit on August 25, 2009. [doc. # 66]. On appeal, Petitioner argued that the District Court violated his constitutional rights by taking into account conduct that the jury acquitted him of committing, namely, possessing the additional firearms. *Id.* On June 10, 2011, the Fifth Circuit affirmed the District Court's sentence, finding that Petitioner's challenge was foreclosed under Fifth Circuit precedent. *United States v. Williams*, 425 F. App'x 389, 390 (5th Cir. 2011) (quoting *United States v. Hernandez*, 633 F.3d 370, 374 (5th Cir. 2011)).

Petitioner's 28 U.S.C. § 2255 motion [doc. # 85] timely followed.[1]  Petitioner asserts the following four grounds for relief: (1) subsequent to Petitioner's sentencing, he discovered new eyewitness evidence, which he provided to defense counsel, but she "refuse[d] to review [it] because she felt it wasn't sufficient enough[;]" (2) Petitioner requested that his "attorney discuss his sentence being run concurrent" with the District Court Judge, but counsel refused; (3) counsel caused the Judge to allow Petitioner only "minutes instead of hours" to decide whether he would testify or not; and, (4) counsel should have objected to the calculation of his criminal history because an additional four criminal history points were incorrectly assessed at sentencing.  [doc. # 85, P. 5-9].  None of these issues were raised on direct appeal.  The matter is now before the Court.

## LAW AND ANALYSIS

### I.      Standard of Review – 28 U.S.C. § 2254

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152, 166 (1982).  When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  As a result, review under § 2255 is limited to four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255.

---

[1] *See Clay v. United States*, 537 U.S. 522, 532 (2003); *see also United States v. Gamble*, 208 F.3d 536 (5th Cir. 2000) (holding, *inter alia*, that where a defendant seeks direct appeal, "the conviction becomes final, and the one-year period begins to run, upon expiration of the time for seeking certiorari in the U.S. Supreme Court, even where...the appellant has not actually filed such a petition."  *Id.*).  Petitioner's judgment of conviction became final 90 days after the Fifth Circuit ruling on June 10, 2011. The one-year limitation period began to run when the time expired for filing a petition for certiorari to the Supreme Court.

Collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*). Thus, even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally. A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (citing *Shaid*, 937 F.2d at 232); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995). Of course, issues raised and disposed of on direct appeal are not subject to further review under section 2255. *See Segler*, 37 F.3d at 1134.

In *United States v. Vaughn*, the United States Court of Appeals for the Fifth Circuit stated:

> [r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *U.S. v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981). Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding.

955 F.2d 367 (5th Cir. 1992).

Even if a defendant cannot establish "cause" and "prejudice," he may still be entitled to relief under § 2255 if there is a constitutional error which would result in a complete miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495-6, 106 S.Ct. 2639, 2649 (1986); *Bousley v. United States*, 523 U.S. 614, 620-2, 118 S.Ct. 1604, 1610-1611 (1998); *United States v. Ward*, 55 F.3d 412, 414 (5th Cir. 1995); *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991). Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent. *Shaid*, 937 F.2d at 232.

## II.    Ineffective Assistance of Counsel

4

In the case *sub judice*, Petitioner puts forth four claims of ineffective assistance of counsel discussed *infra*.  Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2255.  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *United States v. Gipson*, 985 F.2d 212 (5th Cir. 1993); *United States v. Navejar*, 963 F. 2d 732, 735 (5th Cir. 1992).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right.  *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him.  *Id.*

If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.  *See Strickland*, 466 U.S. at 689-90.  The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair."  *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984).  Unreliability and unfairness do not result "if the ineffectiveness of

counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also, Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).  Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time.  *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

      a.      **Claim One: Newly Discovered Evidence**

In Petitioner's first claim, he argues that subsequent to sentencing he discovered "new evidence" – in the form of an eye witness – that would have benefitted him at a new trial.  [doc. # 85-1, P. 4].  Petitioner alleges that he brought this information to the attention of counsel, putting forth a letter dated January 25, 2010 from defense counsel's office to support his position.  [doc. 85-2].  In the aforementioned letter, counsel explains the standard for a grant of a new trial, and further concludes that in his opinion "the Court would not find that the new evidence discovered thus far would probably produce an acquittal in a new trial."  *Id.* at 1.  In response, Respondent points out that Petitioner has failed to "reveal the precise evidence he is relying on and explain how it would result in an acquittal."  [doc. # 89-1, P. 14].  Petitioner identifies the "eyewitness" in his Reply as Jason Davalier, a former inmate of Ouachita Correctional Center, and argues that Mr. Davalier saw the victim pull a weapon out of the window with the intent to kill Petitioner, and furthermore, he did not see Petitioner "'with a weapon.'"  [doc. # 90, P. 6].

The Fifth Circuit applies the "*Berry*" rule to motions for a new trial on the basis of newly discovered evidence.  *United States v. Freeman*, 77 F.3d 812, 816 (5th Cir. 1996) (citing *Berry v. State*, 10 Ga. 511 (1851)).  To receive a new trial, Petitioner must show (1) that the evidence is newly discovered and was unknown to him at the time of trial; (2) that the failure to discover the evidence was not due to his lack of diligence; (3) that the evidence is not merely cumulative, but is material; and (4) that the evidence would probably produce an acquittal.  *United States v.*

*Blackthorne*, 378 F.3d 449, 452 (5th Cir. 2004) (citing *United States v. Gresham*, 118 F.3d 258, 267 (5th Cir. 1997)).  "Unless all four elements are satisfied, the motion for new trial must be denied." *Id.*

　　　　Petitioner has not made a showing of any of these dispositive elements.  Specifically, Petitioner points to the statements allegedly made by Mr. Davalier, but does not contend that this evidence was "unknown to him at the time of trial" or that his "failure to discover the evidence was not due to his lack of diligence."  Assuming *arguendo* that Mr. Davalier's testimony would be material, Petitioner does not establish that it would produce an acquittal.  As Respondent properly points out, "[t]he government presented a considerable amount of eye-witness testimony at trial." [doc. # 89-1, P. 14].  Specifically, at trial Antoinette Tillman testified that Petitioner showed her that he was wearing a firearm tucked into his waistband, which he removed and pointed into the passenger side of the car.  [doc. # 70, P. 6-7].  Additionally, Jamie Foster testified that she took the gun from Petitioner's possession, had seen it on his possession on three separate occasions, and Petitioner had brought two other firearms to her dwelling.  *Id.* at 57-59. Finally, Antron Ellis testified that he saw Petitioner point the firearm at the back of the victim's car and that he took the firearm from Ms. Foster.  *Id.* at 81-84.

　　　　In conclusion, Petitioner does not articulate how Mr. Davalier's testimony would combat all of these eyewitness accounts and ultimately lead to his acquittal.  Accordingly, Petitioner has failed to satisfy the *Berry* test; and therefore, his claim lacks merit.

　　　　**b.**　　　　**Claim Two: Failure to Request that Petitioner's Sentence Run Concurrently**

　　　　Petitioner next states that his counsel was ineffective for failing to request that the court run his sentence concurrently with the yet to be imposed sentence on his state offenses.  [doc. # 85, P. 6].

　　　　The Fifth Circuit has made it clear that "counsel is not required to engage in the filing of futile motions."  *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)(citing *Williams v. Beto*,

354 F.2d 698, 703 (5th Cir. 1965)).  Moreover, as Respondent properly asserts, the district court judge has "great discretion in sentencing a defendant within a statutory term of imprisonment," which is only limited by the Sentencing Guidelines and the Section 3553(a) factors.  *United States v. Alvarado*, 691 F.3d 592, 596 (5th Cir. 2012); *United States v. Teel*, 691 F.3d 578 (5th Cir. 2012).

Petitioner has failed to demonstrate that but for counsel's failure to request the court to run his sentence concurrently, the results of the sentencing proceeding would have been different. Therefore, Petitioner's claim fails the second-prong of the *Strickland* test and is without merit.

c.      **Claim Three: Petitioner rushed into deciding to testify at trial.**

Petitioner argues that counsel caused the trial judge "to change his mind[,] giving the petitioner minutes instead of hours" to decide whether he was going to testify.  [doc. # 85, P. 8]. The record reveals that counsel advised Petitioner that he has the right to testify in this matter, and furthermore, counsel advised Petitioner against testifying in his own behalf.  [doc. # 70, P. 143].  Counsel noted for the record that Petitioner "concur[ed] with [counsel's] decision not to put him on the stand," which was confirmed by Petitioner himself.  *Id.*  However, when the trial judge asked Petitioner if this was correct, Petitioner stated "[i]s it possible maybe I could consider that [*sic*] situation for, like, till the next morning . . ."  *Id.* at 144.  Counsel stated that she was not opposed to allowing Petitioner to consider his options; however, she reaffirmed that her advice will not change.  *Id.*  The court then decided to leave the case open until the next morning, and then counsel simply reminded the court that the government would have the opportunity to have rebuttal witnesses.  *Id* at 145.  In response, the Prosecution stated that they needed to know at the "earliest [time] because [they] sent some witnesses in different directions." *Id.*  To this, the court once again asked counsel to confer with Petitioner because "we would need a decision in the next ten minutes or so whether he wishes to testify."  *Id.*  Ultimately, after conferring with Petitioner, counsel stated on the record that Petitioner "chooses not to testify,"

which was subsequently confirmed by Petitioner himself.  *Id.* at 146.

The record is clear that counsel was diligent in explaining to Petitioner his constitutional right to testify in a criminal proceeding.  Moreover, the trial court judge acted in tandem with counsel to insure that Petitioner made an informed decision.  To that end, the court gave Petitioner two separate occasions to confer with counsel before Petitioner ultimately decided not to testify.  However, most importantly, Petitioner fails to argue that if he was given till the next morning to make a decision, his decision would have actually changed.  Furthermore, Petitioner fails to argue that if he actually ended up testifying in his own behalf, the results of his trial would have been different.  Accordingly, Petitioner fails to establish either prong of the *Strickland* test, and therefore, his claim is without merit.

       **d.**    **Claim Four: Counsel failed to object to criminal history calculation.**

Finally, Petitioner argues that counsel was ineffective by not objecting to the calculation of his criminal history because the court incorrectly assessed four additional criminal history points.  [doc. # 85-1, P. 5].  The pre-sentencing report reveals that Petitioner received:

1.      3 points for the offense of carrying a weapon on school property for which he was sentenced on April 29, 1993 (PSR, ¶ 29);

2.      3 points for possession of cocaine with intent to distribute for which he was sentenced on September 7, 2000 (PSR, ¶ 37); and,

3.      1 point for a misdemeanor theft offense for which he was sentenced on January 11, 1999  (PSR, ¶ 32).

Ultimately, utilizing Petitioner's undisputed convictions, the Probation office correctly a total of 13 criminal history points, which according to the Sentencing Table in the U.S.S.G. Chapter Five, Part A, 13, establishes a Criminal History Category of VI.  (PSR, ¶ 42).   As Petitioner's criminal history points were correctly assessed by the district court against the defendant, counsel was not ineffective for failing to object.  Petitioner's final claim is without

merit, and it is therefore recommended that Petitioner's motion for *habeas* relief on the grounds of ineffective assistance of counsel be **DENIED.**[2]

## CONCLUSION

For the reasons stated above, it is recommended that Petitioner's motion [doc. # 85] under 28 U.S.C. § 2255 be **DENIED**.  Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Further, pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum**

---

[2] To the extent that Petitioner asserts that his counsel failed to raise "issues" on appeal, Petitioner neither puts forth an argument, nor does he even articulate what these other "issues" are. *See* [doc. # 85-1, P. 6]. Therefore, the undersigned recommends that this unnumbered claim, appended to the end of Petitioner's brief, be denied as without merit.

10

**setting forth arguments on whether a certificate of appealability should issue.**  See 28

U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District**

**Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 15th day of November, 2012.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE